T.C. Summary Opinion 2009-120

UNITED STATES TAX COURT

CORINNE N. ORTEGA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6092-08S.                  Filed August 3, 2009.

Corinne N. Ortega, pro se.

<u>Michael Medina</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2004, the taxable year in issue.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $3,877 in petitioner's Federal income tax for 2004. The issue for decision is whether petitioner is entitled to deduct on Schedule A, Itemized Deductions, educational expenses of $19,885 under section 162(a). We hold that she is not.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

When the petition was filed, petitioner resided in the State of New York.

After graduating from college with a bachelor's degree in psychology, petitioner earned a master's degree in clinical psychology from the University of Nebraska in 1996. From April 1997 until August 2003 petitioner worked for the State of Nebraska Department of Corrections (Corrections) as a Mental Health Practitioner II (MHP II). To qualify for this position, petitioner was required to be licensed as a mental health practitioner[2] under Neb. Rev. Stat. Ann. sec. 38-2122

---

[2] "Mental health practitioner" was the name of the license held by petitioner as well as the title of the position she held at Corrections.

(LexisNexis 2008)[3], hold a master's degree, and have 3,000 hours of postdegree supervised counseling experience.  In addition to being licensed as a mental health practitioner, petitioner was also certified as a psychological assistant.

As an MHP II, petitioner provided mental health services for individuals, families, and/or groups under the supervision of a licensed psychologist.  Petitioner's primary job responsibilities included individual and group therapy with inmates, intake screening of new inmates, suicide risk assessment, provision of acute mental health care, mental health conditions screening, and some staff training.  In addition, as a psychological assistant petitioner was authorized to (but did not in fact in her position as an MHP II) perform psychological testing at the master's level under the supervision of a psychologist.

While working for Corrections, petitioner enrolled in, and completed, course work at the University of Nebraska leading to a doctoral degree in psychology.  A final requirement for the doctoral degree was completion of a 1-year internship. Petitioner's internship required her to relocate to attend a program with the U.S. Department of Justice, Federal Bureau of Prisons (BOP) at the Federal medical center in Devens,

-----

[3] Neb. Rev. Stat. Ann. sec. 71-1314, in effect for 2004, is now Neb. Rev. Stat. Ann. sec. 38-2122 (LexisNexis 2008).  There is no substantive change. See 2007 Neb. Laws 463, 740. Subsequent references to Neb. Rev. Stat. Ann. are to the current (LexisNexis 2008) edition.

Massachusetts. Although petitioner actually completed the internship in Massachusetts, she was enrolled in a course called "Internship" at the University of Nebraska.

Petitioner terminated her employment with Corrections in August 2003 in order to begin the internship with BOP in September 2003. Petitioner completed the internship in early September 2004. The internship was a supervised program of study with the stated objective of preparing interns for entry-level service as practicing clinical or counseling psychologists.

After completing the internship and graduating with a doctoral degree, petitioner became licensed in New York as a psychologist. Had petitioner returned to Nebraska, she would have been eligible to be licensed there as a psychologist. Without the doctoral degree, petitioner could not have been licensed in New York in the field of mental health, as New York did not then permit an individual to practice in that field with only a master's degree.

Petitioner started employment as a staff psychologist with the BOP in New York at the end of 2006. The minimum education required for a staff psychologist with the BOP was a doctoral degree in clinical psychology or a closely related field. As a staff psychologist, petitioner was charged with making professional decisions concerning the diagnosis and treatment of inmates under her care, with consultative supervision from the

chief of psychology services.  Petitioner's primary job responsibilities included individual and group therapy with inmates, intake screening of new inmates, suicide risk assessments, acute mental health issues screening, psychiatric referrals, and crisis intervention.  In addition, petitioner administered and interpreted various psychological tests.  As indicated in the job description, a staff psychologist could also be tasked to supervise the work of graduate-level psychologist trainees, practicum and intern students, and paraprofessional counselors.  Furthermore, a staff psychologist could assume the responsibilities of the chief psychologist in his or her absence.

## Discussion[4]

Section 162(a) generally allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Expenditures made by an individual for education are deductible as ordinary and necessary business expenses if the education maintains or improves skills required by the individual in her employment or other trade or business.  Sec. 1.162-5(a), Income Tax Regs.  However, the general rule under section 1.162-5(a), Income Tax Regs., does not apply if the expenditures fall within either of two specified categories; i.e, they are nondeductible

---

[4]  We decide this case without regard to the burden of proof.

expenditures if: (1) They are incurred to meet the minimum education requirements for qualification in a taxpayer's trade or business; or (2) they qualify the taxpayer for a new trade or business. See Robinson v. Commissioner, 78 T.C. 550, 552 (1982); sec. 1.162-5(b), Income Tax Regs.

Respondent argues that the educational expenses incurred by petitioner qualified her for a new trade or business and therefore are nondeductible. Petitioner contends that the educational expenses are deductible because she worked in the field of psychology both before and after the educational expenses were incurred. On balance, the facts favor the Government, and for that reason we hold for respondent.

An individual who, through education, improves her skills in an existing trade or business may also become qualified for a new trade or business. Thompson v. Commissioner, T.C. Memo. 2007-174. If the education in question qualifies the taxpayer to perform tasks and activities significantly different from those she could perform before the education, then the education is deemed to qualify the taxpayer for a new trade or business. Robinson v. Commissioner, supra at 552 (citing Browne v. Commissioner, 73 T.C. 723, 726 (1980), Diaz v. Commissioner, 70 T.C. 1067, 1074 (1978), affd. without published opinion 607 F.2d 995 (2d Cir. 1979), Glenn v. Commissioner, 62 T.C. 270, 275 (1974), and Weiszmann v. Commissioner, 52 T.C. 1106, 1110 (1969),

affd. 443 F.2d 29 (9th Cir. 1971)).  The mere capacity to engage in a new trade or business is sufficient to disqualify the expenses for the deduction.  See Weiszmann v. Commissioner, supra at 1111.

Although the duties of an MHP II and a staff psychologist overlapped, the MHP II position was a subordinate position under the supervision of a psychologist, such as a staff psychologist. As an MHP II, petitioner provided mental health services under supervision to inmates.  The psychological assistant certification permitted petitioner to perform psychological testing only under the supervision of a psychologist.

Conversely, as a staff psychologist, petitioner provided mental health services to inmates with only consultative supervision from the chief of psychology services.  A staff psychologist could also supervise master's-level psychologist trainees, interns, and paraprofessional counselors; consequently, petitioner could supervise others in positions comparable to the position she held at Corrections and as an intern.  Moreover, the staff psychologist could function as the acting chief psychologist when that person was absent from the institution. Thus, as a staff psychologist, petitioner was a peer of the chief psychologist, not a subordinate as in her Corrections position and internship.

This Court has disallowed the educational expense deduction in cases where the taxpayer was in the same general field both before and after the educational expenses were incurred and the education qualified the taxpayer for a new trade or business in that same general field.  E.g., Robinson v. Commissioner, supra at 552-557 (licensed practical nurse and registered nurse); Johnson v. Commissioner, 77 T.C. 876, 878-880 (1981) (real estate agent and real estate broker); Glenn v. Commissioner, supra at 275 (licensed public accountant and certified public accountant); Antzoulatos v. Commissioner, T.C. Memo. 1975-327 (intern pharmacist and registered pharmacist).  The basis for these determinations was informed by applicable State law provisions.

Under Nebraska State law, the minimum educational requirement to be licensed as a mental health practitioner was a master's degree.  Neb. Rev. Stat. Ann. sec. 38-2122.  However, to be licensed as a psychologist an applicant was required to possess a doctoral degree.  Neb. Rev. Stat. Ann. sec. 38-3114. Mental health practice includes the provision of treatment, assessment, psychotherapy, counseling, or equivalent activities but specifically excludes the practice of psychology, diagnosis of major mental illness or disorder without consultation with a qualified physician or a licensed psychologist, measuring personality or intelligence for the purpose of diagnosis or treatment planning, and using psychotherapy to treat the

psychological aspects of physical illness.  Neb. Rev. Stat. Ann. sec. 38-2115.  The practice of psychology specifically includes psychological testing and the evaluation or assessment of personal characteristics such as intelligence and personality, diagnosis and treatment of mental and emotional disorders and the psychological aspects of physical illness, and supervision of qualified individuals performing such services.  Neb. Rev. Stat. Ann. sec. 38-3108.

Similarly, New York State law requires, inter alia, a doctoral degree in psychology to qualify for a license as a psychologist.  N.Y. Educ. Law sec. 7603 (McKinney 2001).  The practice of psychology includes psychological testing and counseling, and diagnosis and treatment of mental illness and disorders including the psychological aspects of physical illness.  Id. sec. 7601-a (McKinney Supp. 2009).  Until January 2005 there was no equivalent to the Nebraska mental health practitioner classification in New York.  See id. sec. 8402. Beginning in January 2005, to be licensed as a mental health counselor in New York an applicant must have attained at least a master's degree.  Id.  Therefore, at the time petitioner enrolled in the internship in September 2003 she was only qualified to provide services as a mental health practitioner in Nebraska and not in New York.  Following the internship, she possessed the requisite education necessary to apply for a license as a

psychologist in both New York and Nebraska. Consequently, State law provisions precluded petitioner from practicing psychology until she completed her doctoral degree.

Indeed, the self-proclaimed goal of the internship program was to prepare interns for entry-level service as practicing psychologists. Even though petitioner was in the field of psychology before and after the internship, the doctorate fulfilled the statutory requirements for licensing as a psychologist in both New York and Nebraska, met the minimum qualifications for staff psychologist, and qualified her to perform tasks and activities significantly different from those she could perform before the education. Thus, petitioner's education qualified her for a new trade or business. As a result, petitioner is not entitled to deduct the educational expenses under section 162(a).

## Conclusion

We have considered all of the arguments made by petitioner, and, to the extent that we have not specifically addressed them, we conclude they are unpersuasive.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.